Oliver Wendell FERGUSON, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 54001, 54002.

Court of Criminal Appeals of Texas,
Panel No. 3.

Sept. 20, 1978.

Appellants' Motion for Rehearing En Banc
Denied Nov. 8, 1978.

Paul J. Chitwood and Paul P. Riley, Dallas, for appellant.

Henry Wade, Dist. Atty., John H. Hagler and Robert E. Whaley, Asst. Dist. Attys., Dallas, for the State.

Before ROBERTS, PHILLIPS and VOLLERS, JJ.

## OPINION

PHILLIPS, Judge.

These are appeals from two convictions for violations of the Texas Securities Act. Art. 581–29 et seq., V.A.C.S. In Cause No. C72–6655–MI, the appellant was convicted of the sale of an unregistered security. Art. 581–29(B), V.A.C.S. In Cause No. C72–6656–MI, the appellant was convicted of selling a security without being a duly registered dealer in securities. Art. 581–29(A), V.A.C.S. Punishment was assessed

by the court in each case at four years' imprisonment.

The sufficiency of the evidence is not challenged. The securities in this case were issued by Empresa Azufrera Del Peru S.A., a Peru sulphur mining company. The securities were written wholly in Spanish. A copy of the securities was set out in the indictments and in the court's charge. During the trial the appellant testified in his own behalf. On cross examination he admitted that the securities were not registered with the Texas Securities Commission and that he was not a registered securities dealer. The appellant testified as follows:

"Q And at the time you made these sales, was this Empresa Azu Frera [sic] Del Peru certificate of stock registered with the Securities Commission of Texas?
A No, sir.

*    *    *    *    *    *

Q And when you did, either invite officers or—or sell this investment, you said you were not registered with the Securities Commission or the State of Texas as a stock dealer, or a salesman, or an agent?
A Yes, sir.
Q You were not registered?
A I was not registered.

*    *    *    *    *    *

Q And you have read the first two counts, which says that you were not registered when the security was sold, as a dealer and the second which says that the security was not registered when it was sold, have you looked those over?
A Yes, sir.
Q Are those two statements true?
A I was not a dealer, and I was not registered.

*    *    *    *    *    *

Q And you definitely know that when the note is backed by a bonus, like a stock, that it is a security, don't you?
A Yes, sir."

William Davis, an employee of the Texas State Securities Board, corroborated appellant's statement regarding the Empresa certificates, and testified that the certificates were securities within the meaning of the Texas Securities Act and were required to be registered.

In his first ground of error appellant contends that the trial court failed to conduct the trial wholly in the English language. Appellant argues that in failing to include an English interpretation of the security in the charge, the trial court did not conduct the trial wholly in English. The appellant offered no objection at trial to the court's charge on this basis. The appellant cites and relies upon Garcia v. State, 151 Tex.Cr.R. 593, 210 S.W.2d 574; however, an examination of that case reveals that it is not decisive of this issue. In Garcia, this Court held that a Spanish speaking defendant was entitled to an interpreter in order to afford him his constitutional right to confrontation of witnesses.

The testimony at trial established that the stock certificates set out in the charge were securities. Further, the definition of a "security" given in the court's charge appears to comply with Art. 581–4(A), V.A.C.S. In any event, the appellant failed to object to the form of the charge at trial and the error, if any, is waived. Nothing is presented for review. Patterson v. State, Tex.Cr.App., 509 S.W.2d 857; Rummel v. State, Tex.Cr.App., 509 S.W.2d 630; Cassell v. State, Tex.Cr.App., 507 S.W.2d 228. Appellant's first ground of error is overruled.

In his next ground of error appellant argues that the indictments are fatally defective for failing to state an offense. Appellant contends that since the securities were wholly in Spanish and not translated into English, the indictments fail to allege an offense.[1]

Appellant filed no motion in the trial court to quash the indictments, and this

---

1. It is noted that appellant testified he had training in and could read the Spanish language.

complaint is raised for the first time on appeal. Consequently, only such contentions cognizable under Art. 27.08, V.A.C. C.P., to-wit, that the indictment fails to allege the constituent elements of the offense, are before this Court. *American Plant Food Corporation v. State*, Tex.Cr. App., 508 S.W.2d 598; *Terry v. State*, Tex. Cr.App., 517 S.W.2d 554; *Peterson v. State*, Tex.Cr.App., 508 S.W.2d 844.

Appellant relies upon *Drozda v. State*, 86 Tex.Cr.R. 614, 218 S.W.2d 765. In *Drozda*, a case involving an indictment for *libel*, this Court held that a defamatory article published in the Bohemian language must be accompanied by an English translation in order to determine whether the published matter was libelous. We do not consider our holding in *Drozda* persuasive with regard to an indictment alleging securities violations. In a libel indictment, the contents of the published writings necessarily constitute an element of the offense. Without knowing the contents of the writing, one cannot know if the publication is libelous. The same argument does not hold true with regard to a securities violation.[2] It is not the language of the instrument which is important, but whether the instrument itself constitutes a security. In the instant case, the instrument clearly falls within the statutory definition of a security. Art. 581–4(A), supra.

In *Sharp v. State*, Tex.Cr.App., 392 S.W.2d 127, an appeal from a conviction for unlawful offer to sell an unregistered security, we held:

"It is conceded that where a sale is actually consummated it is better pleading to incorporate in the indictment the stock certificate itself."

While recognizing that it is better pleading to set out the security in haec verba in the indictment, it is not essential in order to charge a violation of the securities law. *Sharp v. State*, supra; *Shappley v. State*, Tex.Cr.App., 520 S.W.2d 766; *Cox v. State*, Tex.Cr.App., 523 S.W.2d 695. In the instant case, the State followed the better practice and included a copy of the security in the indictments in haec verba. We hold that the indictments were sufficient to allege the constituent elements of the offenses of unlawful sale of an unregistered security and unlawful sale of a security without being a duly registered securities dealer. Arts. 21.02, 21.04 and 21.11, V.A.C. C.P. Appellant's second ground of error is overruled.

In his grounds of error three and four appellant contends in Cause No. C72–6656–MI that the indictment is fatally defective and, further, that there is a fatal variance between the allegations of the indictment and the evidence submitted.[3] The indictment sets out a copy of the security. The security has the handwritten word "Copy" on its face. The security introduced into evidence does not have this handwritten word "Copy" appearing on its face. Appellant contends that this variance is fatal. Appellant offered no objection to the introduction of the security into evidence at trial. He further contends that it is not

---

**2.** In *Wilkes v. U. S.*, 80 F.2d 285 (9th Cir. 1935), the defendants were indicted for using the mails in execution of a scheme to defraud. The scheme charged in the indictment was that the defendants would organize and control a corporation which would issue and sell capital stock and would defraud the stockholders by receiving certain shares of the corporation as a bonus. The indictment copied portions of a pamphlet the defendants used in order to sell the stock. This pamphlet began with "Report of the Directors of Italo Petroleum Corporation of America and Subsidiary Companies for the Period October 31, 1928, to July 31, 1929," and ended with certain Italian words quoted in the indictment but not translated into English. That Court held:

"The sole objection to Count 8 is that it contains no translation of the Italian words quoted therein. Such a translation was unnecessary. The words are used merely to identify the pamphlet alleged to have been mailed. They do not constitute the gist of the offense."

See also *People v. Martinez*, 117 Cal.App.2d 701, 256 P.2d 1028 (1953).

**3.** The appellant refers in his brief to State's Exhibit No. 12. The stock certificate appears to have been introduced in the record as State's Exhibit No. 10, but was mislabeled as State's Exhibit No. 12.

illegal to sell a copy of a security and consequently the indictment fails to state an offense. He filed no motion to quash the indictment and raises this contention for the first time on appeal. We find appellant's contentions to be without merit.

■ Unnecessary words, in an indictment, when not descriptive of that which is legally essential to the validity of an indictment or information, may be rejected as surplusage. *Collins v. State*, Tex.Cr.App., 500 S.W.2d 168; *Cohen v. State*, Tex.Cr. App., 479 S.W.2d 950; *Malazzo v. State*, 165 Tex.Cr.R. 441, 308 S.W.2d 29.

In *Burrell v. State*, Tex.Cr.App., 526 S.W.2d 799, this Court noted:

"There is, however a well recognized exception to the general rule discussed above, and that is where the unnecessary matter is descriptive of that which is legally essential to charge a crime it must be proven as alleged, even though needlessly stated. See 13 Texas Law Review 489 (note); 1 Branch's Ann.P.C., 2d ed., Sec. 518, pp. 491–498, and cases there cited.

It is well established that where a person, place or thing necessary to be mentioned in the indictment is described with unnecessary particularity, all circumstances of description must be proven, *Smith v. State*, 107 Tex.Cr.R. 511, 298 S.W. 286 (1927), and cannot be rejected as surplusage, for they are thus made essential to the identity. *Maples v. State*, 124 Tex. Cr.R. 478, 63 S.W.2d 855 (1933). Thus, if the pleader makes unnecessary allegations descriptive of the identity of the offense charged, it is incumbent upon the State to establish such allegations by evidence. *McClure v. State*, 163 Tex.Cr.R. 650, 296 S.W.2d 263 (1956)."

■ Consequently, the deciding factor in the instant case is whether the word "Copy" appearing in the body of the indictment is descriptive of that which is legally essential to charge the offense. As discussed previously, it is not the language or

wording of a security which defines the nature of a securities violation; rather, it is whether the instrument falls within the definition of a security. The word "Copy" appearing in the body of a security placed in the indictment does not determine its tenor as a security within the meaning of Art. 581–4(A). We hold, therefore, that the handwritten word "Copy" appearing in the indictment was not descriptive of the offense charged and may be disregarded as surplusage. Finding no fatal defect in the indictment nor fatal variance in the proof offered at trial, appellant's final contentions are overruled.

The judgments are affirmed.

ROBERTS, Judge, concurring.

Although I agree that the judgment should be affirmed, I cannot agree with all of the reasoning of the majority opinion.

In his fourth ground of error appellant contends that the indictment is fatally defective because the security set out in the indictment has the word "Copy" written across the face of the security. And, because the security introduced in evidence did not have this word appearing on it, appellant contends in his third ground of error that there was a fatal variance between the pleading and the proof.

In his argument supporting his fourth ground of error appellant relies upon *Acuff v. State*, 429 S.W.2d 888 (Tex.Cr.App.1968), which in its turn relied principally upon the holding in *Payne v. State*, 391 S.W.2d 53 (Tex.Cr.App.1965). Both of those cases were forgery cases. In *Payne*, the check set out in the indictment had upon its face the word "FORGERY." In *Acuff*, the word "forged" appeared on the face of the check set out in the indictment. In both of those cases we held that such a check could not be the subject of a forgery because it showed on its face that it was a forged instrument.[1]

Both *Acuff* and *Payne* were cases arising under our 1925 Penal Code. In *Martinez v.*

---

1. We thus indulged the necessary presumption that these checks were reproduced in the indictment in precisely the same form and language as they appeared when they were passed.

*State,* 551 S.W.2d 735 (Tex.Cr.App.1977), the prosecutions were for forgery under the 1974 Penal Code. In those cases the words "Paid Bexar County National Bank, San Antonio, Texas" appeared on the checks set out in the indictments. That defendant contended in each of his cases that " 'the check set out in the indictment could not be the subject of forgery because it shows on its face to have already been honored by the bank upon which it was drawn' and 'the check set out by its tenor in the indictment contains notations which the evidence shows were made after the check was passed.' " 551 S.W.2d at 735.

The defendant in *Martinez* relied upon *Payne* and *Acuff.* We held that those two cases were not in point, for the following reasons:

"Under former Penal Code Art. 979, V.A.P.C., the instrument which was the subject of the forgery must have been made ' . . . in such manner that the false instrument so made (if the same were true) have created, increased, diminished, discharged or defeated any pecuniary obligation, or would have transferred, or in any manner have affected any property whatever.' Under the former Code, Art. 989, V.A.P.C. defined 'pecuniary obligation' as 'every instrument having money for its object, and every obligation for the breach of which a civil action for damages may be lawfully brought.'

"It follows that the offense of forgery as same is defined under Sec. 32.21, supra, does not require that the instrument in writing be such as to create, increase, diminish, discharge or defeat any pecuniary obligation. See Practice Commentary to Sec. 32.21, supra.

"While an instrument with 'Forgery' stamped on it could not have been the subject of forgery under the former Penal Code in that it could not create or defeat a pecuniary obligation, no such requirement is made by Sec. 32.21, supra, under which prosecution was brought in

the instant cases. We reject appellant's contention that instruments with 'Paid' on the face of them cannot be the subject of forgery." 551 S.W.2d at 736–737.

As has been noted, *Payne* and *Acuff* dealt with allegedly forged instruments which were set out *in haec verba* in the indictment. It appears to be appellant's contention that these forgery cases are analogous to his case (where the indictment charges him with selling a security without being a registered dealer in securities) because the indictment here, like those in *Payne* and *Acuff,* sets out a disputed written instrument (in this case the alleged security) *in haec verba.*

I believe that *Acuff* and *Payne* were correctly analyzed and explained in *Martinez,* and that *Martinez* also provides the underlying rule which helps decide the issues before us here. The essence of the *Martinez* holding is that any mistake in setting forth an instrument *in haec verba* will not vitiate the indictment where the mistake is not material to the offense charged.[2]

As already noted, the indictment *in this case* charges appellant with selling a security without being a registered securities dealer. I would hold that the gravamen of this offense is the act of selling without being a registered dealer and that therefore the word "Copy" written across the face of the alleged security was not material to the offense charged. See *Shappley v. State,* 520 S.W.2d 766 (Tex.Cr.App.1974); and compare *King v. State,* 519 S.W.2d 651, 652 (Tex.Cr.App.1975) (gravamen of forgery offenses is the intent to injure or defraud). I would not reach the issue which the majority reaches when it concludes that the word "Copy" in the body of an alleged security does not ever have anything to do with the determination of whether the document is a security. There are other securities law violations, in some of which we might be compelled to reach a different conclusion because the instrument alleged to be a security was itself of significant materiality to the offense charged.

---

2. Thus, it follows that where a fatal variance is alleged—as it has been in the present case—such a mistake will not lead to reversal where the variance between the indictment and the proof is not material. See *Webster v. People,* 92 N.Y. 422, 425–426 (1883).

For the reasons stated, I would hold that the indictment was not fundamentally defective and that any variance between the indictment and the proof was not material. I concur in the overruling of appellant's third and fourth grounds of error in Cause No. 54,002.

